```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```
_____

MARGARET MARIE GRAY,

                      Plaintiff,

      -vs-                      **No. 1:16-CV-00231 (MAT)**
                                      **DECISION AND ORDER**
CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY,
                      Defendant.
_____

**I.   Introduction**

Represented by counsel, Margaret Marie Gray ("plaintiff") brings this action pursuant to Title II of the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her application for disability insurance benefits ("DIB"). The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, plaintiff's motion is granted to the extent that this case is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.

**II.  Procedural History**

The record reveals that in July 2011, plaintiff (d/o/b August 17, 1974) applied for DIB, alleging disability as of May 11, 2007. After her application was denied, plaintiff requested a hearing, which was held before administrative law judge Donald T. McDougall

("the ALJ") on October 3, 2014.[1] The ALJ issued an unfavorable decision on October 16, 2014. The Appeals Council denied review of that decision and this timely action followed.

**III. The ALJ's Decision**

Initially, the ALJ found that plaintiff met the insured status requirements of the Social Security Act through December 31, 2012. At step one of the five-step sequential evaluation, see 20 C.F.R. § 404.1520, the ALJ determined that plaintiff had not engaged in substantial gainful activity since May 11, 2007, the alleged onset date. At step two, the ALJ found that plaintiff suffered from the severe impairments of right shoulder/arm workplace injury; rheumatoid arthritis and osteoarthritis; asthma; fibromyalgia; and obesity. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any listed impairment.

Before proceeding to step four, the ALJ determined that, considering all of plaintiff's impairments, plaintiff retained the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) "except she should be able to change positions briefly (1-2 minutes) from sit to stand or vice versa at least every [half] hour; no exposure to extremes of heat, cold, wetness or humidity; no exposure to extremes of fumes, dusts, gases or other respiratory irritants; no more than occasional use of right arm/hand and

---

[1] Plaintiff's case was initially assigned to ALJ Nancy L. Pasiecznik, who held a previous hearing on February 5, 2013.

2

shoulder; no lifting more than 10 pounds on the right; no kneeling or crawling; no more than occasional balancing, crouching or stooping; no ladders, ropes or scaffolds; no heights or dangerous moving machinery and no more than occasional stairs or ramps." T. 20.

At step four, the ALJ found that plaintiff could not perform any past relevant work. At step five, the ALJ found that considering plaintiff's age, education, work experience, and RFC, jobs existed in the national economy which plaintiff could perform. Accordingly, he found that plaintiff was not disabled.

**IV. Discussion**

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); see also Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000).

Plaintiff contends that the ALJ failed to properly weigh the consulting state agency opinion of Dr. John Schwab, and that Dr. Schwab's opinion was rendered stale by the time of the ALJ's decision due to intervening changes in the plaintiff's medical condition. Dr. Schwab's consulting examination, performed on September 23, 2011, found that plaintiff had a positive straight

leg raise ("SLR") test, squatted to only half of normal "because she said her right knee hurt[]," and demonstrated trigger point tenderness.[2] T. 458. Dr. Schwab diagnosed plaintiff with obesity (plaintiff was five feet five inches tall and weighed 327 pounds), polymyostitis, rheumatoid arthritis, osteoarthritis, fibromyalgia, asthma, right shoulder pain, and left ankle pain. Despite his findings on examination and his diagnoses of these several conditions, Dr. Schwab opined that plaintiff "should avoid any activity that triggers her asthma, [but] otherwise [had] no restrictions based on the findings of [his] examination." T. 459.

Plaintiff cites the case of Skupien v. Colvin, 2014 WL 3533425 (W.D.N.Y. July 16, 2014), in which the Court found that the same consulting examiner's opinion was internally inconsistent. In Skupien, the Court held that "Dr. Schwab's 'no restrictions' opinion [was] inconsistent with his examination findings and the ALJ was required to reconcile the inconsistency or, if he could not do so, seek clarification from Dr. Schwab." Id. at *4. The Commissioner argues that Skupien is distinguishable, contending that in comparison to Skupien, the abnormal findings in the instant consulting examination were "few . . . [and did] not suggest limitations beyond those assessed by the ALJ." Doc. 11-1 at 20. Upon a thorough review of the administrative record, the Court disagrees and, for the reasons discussed below, finds that the ALJ

---

[2] Fibromyalgia pain is often associated with tenderness in at least 11 of the 18 "tender" or "trigger" points. See SSR 12-2p, Titles II & XVI: Evaluation of Fibromyalgia (S.S.A. July 25, 2012).

4

failed to adequately explain reconcile the inconsistencies or, in the alternative, seek clarification from Dr. Schwab.

The ALJ gave "significant" weight to Dr. Schwab's opinion, finding that "it was based on personal observations, examination findings and [was] consistent with the medical record as a whole." T. 25. The ALJ additionally accorded "little" weight to the opinion of two physicians who examined plaintiff for purposes of workers compensation. A February 2010 independent medical examination ("IME") performed by Dr. Michael Grant found that she had loss of use of the right upper extremity, due to a work-related shoulder injury, of 70 percent. An April 9, 2010 IME performed by Dr. Paul Mason found that plaintiff "may return to a light duty position . . . with work restrictions in place to include no repetitive overhead activities with respect to the right upper extremity." T. 302. Plaintiff contends that because the ALJ gave little weight to these IME opinions, and great weight to the opinion of Dr. Schwab which actually opined *no* restrictions, the ALJ's RFC finding which included various work-related limitations was thus based on the ALJ's improper lay interpretation of the medical evidence without support from any competent medical opinion.

Here, like in <u>Skupien</u>, Dr. Schwab found certain limitations on physical examination which were not accounted for in his ultimate functional opinion. The Court finds this inconsistency significant because both Dr. Schwab's own findings on examination, as well as

5

the medical record as a whole, suggest that plaintiff would have more restrictions than simply those associated with asthma. Plaintiff's medical record reveals a history of treatment for right shoulder and right knee impairments, both of which required surgery; a history of rheumatoid arthritis and osteoarthritis; a history of fibromyalgia with trigger point tenderness; significant obesity; and asthma.

Given the record evidence of plaintiff's medical conditions, the inconsistencies between Dr. Schwab's findings on examination and his ultimate opinion were such that the ALJ was "required to reconcile the inconsistency or, if he could not do so, seek clarification from Dr. Schwab." Skupien, 2014 WL 3533425, at *4. This is especially so since the ALJ gave little weight to the only other opinions in the record which spoke to plaintiff's functional abilities. Given the weight accorded to these opinions, the ALJ's detailed RFC finding is unsupported by any competent medical opinion and appears to have been based on the ALJ's interpretation of the raw medical evidence, which constituted reversible error. See Lowe v. Colvin, 2016 WL 624922, at *7 (W.D.N.Y. Feb. 17, 2016) ("Because Dr. Sheehan is the only medical opinion in the record to assess Plaintiff's ability to lift and carry with specificity, and because the ALJ ultimately gave little evidentiary weight to that opinion, the Court is left with the circumstance of the ALJ interpreting raw medical data to arrive at a residual functional capacity determination, without the benefit of an expert medical opinion.") (internal quotation marks omitted); Staggers v. Colvin,

6

2015 WL 4751123, *2 (D. Conn. Aug. 11, 2015) ("[A]n ALJ who makes an RFC determination in the absence of supporting expert medical opinion has improperly substituted his own opinion for that of a physician, and has committed legal error.") (quoting Hilsdorf v. Comm'r of Soc. Sec., 724 F. Supp. 2d 330, 347 (E.D.N.Y. 2010)).

The Court also finds that, as plaintiff argues, Dr. Schwab's September 23, 2011 opinion was "stale" by the time the ALJ rendered his decision on October 16, 2014. As plaintiff points out, subsequent to Dr. Schwab's examination but before the ALJ's decision, plaintiff suffered a further right knee injury; underwent a second knee surgery in December 2012, after which she continued to suffer from "chronic ACL deficient knee and significant osteoarthritis"; and was told she would likely need a total knee replacement. T. 811. Under the facts presented by this record, therefore, Dr. Schwab did not have the ability to fully assess plaintiff's functional limitations and his opinion was outdated. See Hawkins v. Colvin, 2016 WL 6246424, *3 (W.D.N.Y. Oct. 26, 2016) (remanding because, inter alia, "the consultative medical examination report was 'stale' at the time of the ALJ's decision, insofar as the report was issued prior to Plaintiff's degenerative disc disease becoming symptomatic").

Accordingly, this case is remanded for further administrative proceedings consistent with this Decision and Order. On remand, the ALJ is directed to further develop the opinion evidence by contacting Dr. Schwab to clarify his opinion and obtaining additional medical opinion evidence. The opinion evidence should

7

address plaintiff's work-related limitations during the entire relevant time period, up to and including her second knee surgery in December 2012. On remand, the ALJ must provide a function-by-function assessment of plaintiff's limitations, and explain how the substantial evidence of record supports each limitation included in the RFC finding.

**V.   Conclusion**

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Doc. 11) is denied and plaintiff's motion (Doc. 9) is granted to the extent that this matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.  The Clerk of the Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**

                                                  **S/Michael A. Telesca**
                                                HON. MICHAEL A. TELESCA
                                                United States District Judge

Dated:     February 10, 2017
          Rochester, New York.